Douglas Ray SUNDAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–86–124–CR.

Court of Appeals of Texas,
Beaumont.

Jan. 27, 1988.

William E. Hall, Jr., and George E. Renneberg, Law Offices of William E. Hall, Jr., Conroe, for appellant.

Anthony K. Bernardino and Thomas D. Glenn, Asst. Dist. Attys., Conroe, for appellee.

OPINION

DIES, Chief Justice.

A jury convicted Appellant of the murder of Johnny Demny and assessed punishment at fifteen years confinement in the Texas Department of Corrections. The jury also made an affirmative finding that Appellant used a deadly weapon in the course and commission of the offense. The trial court entered judgment and sentenced Appellant in accordance with the jury's verdict. Ap-

pellant has perfected this appeal from the judgment of the trial court. Appellant does not challenge the sufficiency of the evidence.

■ By his first point of error Appellant urges that the trial court erred in overruling his challenge for cause against prospective juror Geiver. We find the following in the record of the voir dire examination by the prosecutor:

"[PROSECUTOR]: ... Does anyone here feel they could not give five years probation if they felt the facts warranted it for the offense of murder? Yes, ma'am?

"[MS. GEIVER]: Laurraine Geiver. They should pay for it.

"[PROSECUTOR]: Is that regardless of any fact situation?

"[MS. GEIVER]: Because she is terminally ill or something like that, that's a little different.

"[PROSECUTOR]: So, in that particular situation, you might be able to consider five years probation?

"[MS. GEIVER]: Yes; but other than that, no way.

"[PROSECUTOR]: So, really you can't conceive of a fact situation?

"[MS. GEIVER]: No; there's been too much of it.

"[PROSECUTOR]: But you'd be able to give five years probation if the facts warranted it?

"[MS. GEIVER]: The mercy killing would be the only way. Mercy killing would be the only way I could go with probation.

"[PROSECUTOR]: Okay. Anybody else?"

We find the following exchange in the record of the voir dire examination by defense counsel:

"[DEFENSE COUNSEL]: Now, Mrs. Geiver, ma'am, you stated earlier that you would have, generally speaking, trouble giving probation; is that correct?

"[MS. GEIVER]: Yes.

"[DEFENSE COUNSEL]: Okay. And, I believe the prosecutor told you one hypothetical situation, a mercy kill-

ing where you might consider it; is that correct?

"[MS. GEIVER]: Yes.

"[DEFENSE COUNSEL]: Can you conceive of any other instance, can you conceive of any proper case—

"[PROSECUTOR]: Your Honor, I object to that question as an improper question.

"[THE COURT]: Overruled at this time.

"[DEFENSE COUNSEL]: Thank you.

"[DEFENSE COUNSEL] (Continuing:) Can you conceive of any other facts where you could follow the law and give probation?

"[MS. GEIVER]: Not if there's a killing involved, then I couldn't.

"[DEFENSE COUNSEL]: You could not?

"[PROSECUTOR FRAZIER]: Your Honor, excuse me, I believe that the proper standard is would you consider, not would give. ·

"[THE COURT]: Thank you, Counsel. Mr. Bernardino will voice objections for the State. Thank you.

"[DEFENSE COUNSEL] (Continuing:) I'll use the prosecutor's words, could consider. Is it your statement, then, ma'am, that you couldn't consider probation in a murder case unless it involved a mercy killing, fitting the hypothetical the State posed?

"[MS. GEIVER]: No.

"[DEFENSE COUNSEL]: Could we approach the bench, please?

"[THE COURT]: You may.

"REPORTER'S NOTE: (WHEREUPON THE FOLLOWING DISCUSSION IS HAD AT THE BENCH AND OUT OF THE HEARING OF THE VENIREPERSONS:)

"[THE COURT]: Anything further, Counsel?

"[DEFENSE COUNSEL]: Yes, sir. Ma'am, I'd just like for you to state again, for the Judge, whether you could consider probation in a murder case in any other fact situation other than a mercy killing?

"[MS. GEIVER]: I don't think I can.

"[DEFENSE COUNSEL]: Well, I'll need a yes or a no.

"[MS. GEIVER]: No.

"[DEFENSE COUNSEL]: I move that she be excused for cause.

"[THE COURT]: Do you have anything further?

"[PROSECUTOR]: No; other than to state that I feel that the fact that she can consider five years probation in any situation should be the standard and for that reason I ask that the motion be revoked.

"[THE COURT]: I'll overrule your motion, Counsel.

"You may take your seat, ma'am."

We note that, at trial, Appellant did not allege any fact which rendered Geiver incapable or unfit to serve on the jury in accordance with the statutory grounds for a challenge for cause set out in *TEX. CODE CRIM.PROC.ANN. art. 35.16* (Vernon Supp.1987). Therefore, no error is preserved for review. *Barney v. State,* 698 S.W.2d 114, 122 (Tex.Crim.App.1985). In his brief, Appellant argues that Geiver was subject to challenge for cause because she was biased or prejudiced against the law applicable to a murder case. Thus, even in his brief, Appellant has failed to specifically point out what law Geiver was shown to be prejudiced against and upon which Appellant was entitled to rely. Therefore, he has not clearly identified the specific point of his complaint and thus does not comply with *TEX.R.APP.P. 74(d)*. *See Barney,* 698 S.W.2d at 123. We nevertheless proceed to review this point of error in the interest of justice. *Id.; see also Carter v. State,* 656 S.W.2d 468 (Tex.Crim.App.1983).

A defendant has the right to challenge for cause any prospective juror who could not give the minimum legal punishment prescribed for the offense alleged in an indictment. *Von Byrd v. State,* 569 S.W.2d 883, 891 (Tex.Crim.App.1978), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979). The minimum punishment which the jury could assess against Appellant should they find him guilty of

murder was five years probation[1] since he had elected to have the jury set his punishment and had filed a sworn, written motion for probation prior to trial. *TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 3a(a)* (Vernon Supp.1987).

The State argues that since Ms. Geiver stated that she could consider assessing punishment at five years probation if the murder involved was a "mercy killing," she was not subject to challenge for cause. The State relies upon *Von Byrd v. State*, 569 S.W.2d at 891, in which case it was held that the trial court did not err in overruling a defendant's challenge for cause where the venire member stated he could consider probation in a proper case. Likewise, in another case, it was held that a venire member who stated he could consider minimum punishment, although it would be a rare case where he would apply probation, was not subject to challenge for cause. *Moore v. State*, 542 S.W.2d 664, 671 (Tex.Crim.App.1976), *cert. denied*, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977). The record in the present case reveals, however, a situation quite different from that in *Von Byrd* and *Moore*.

Ms. Geiver never stated that she would consider the minimum punishment in a proper case. She consistently stated she could consider probation only where the murder involved was a "mercy killing." Ms. Geiver was clearly referring to a hypothetical killing set out by the prosecutor when he began trying to qualify the venire as to the applicable range of punishment. That hypothetical situation involved an older man who killed his terminally ill wife at her own request. Neither the Appellant nor the State has cited to us any case determining the validity of a challenge for cause to a prospective juror who unequivocally states that she could only consider

minimum punishment in one very narrowly defined fact situation. This Court has also been unable to find such authority.[2]

■ Having found no case law to guide us in reviewing this point of error, we must decide the issue under the express language of *TEX.CODE CRIM.PROC.ANN. art. 35.16(c)* (Vernon 1966) which reads, in pertinent part, as follows:

"A challenge for cause may be made by the defense for any of the following reasons:

"...

"2. That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely ... as a mitigation thereof or of the punishment therefor."

We hold that Ms. Geiver consistently exhibited a prejudice against the law which set the minimum punishment for the offense of murder at five years probation. Her statements reveal that she would only consider such punishment appropriate in a "mercy killing." We view this as a prejudice against the minimum legal punishment because Ms. Geiver would create her own statutes concerning minimum punishment for the offense of murder. While every person is entitled to hold and express such beliefs, we believe a criminal defendant has the statutory right under *article 35.16* to have a jury assess punishment after consideration of the full range of punishment for his offense as prescribed by the legislature. If the record revealed that the instant case did involve a "mercy killing," perhaps any error in overruling Appellant's challenge of Ms. Geiver would be harmless. However, the killing involved here could not be described as a "mercy killing" by any stretch of the imagination.

Appellant exercised all of his peremptory strikes, one of which was used to strike

1. Under *TEX.PENAL CODE ANN. sec. 19.02* (Vernon 1974), murder is a first degree felony, and the minimum punishment for a first degree felony is five years confinement in the Department of Corrections. *TEX.PENAL CODE ANN. sec. 12.32(a)* (Vernon Supp.1987).

2. We have noted that a similar situation was presented in *Pierce v. State*, 696 S.W.2d 899 (Tex.Crim.App.1985). There, prospective juror

Gorka indicated he could not consider probation as a punishment for murder. Then he stated, "Other than again, there is a difference in a husband-and-wife relationship, too." The Court of Criminal Appeals neither sustained nor overruled the point of error based on the trial court's overruling the challenge for cause as to Mr. Gorka.

Ms. Geiver. He requested an additional strike as compensation for the peremptory he was erroneously forced to use on her and then identified a juror upon whom he would have exercised the extra strike had he been allowed one. Therefore, the record clearly reveals that Appellant was forced to accept a juror whom he found unacceptable. *Barrow v. State*, 688 S.W.2d 860, 863 (Tex.Crim.App.1985). Appellant's first point of error is sustained.

■ By his thirtieth point of error, Appellant urges that the trial court erred in permitting the State to attack Appellant by attacking his trial attorney during the State's closing argument at the guilt-innocence phase of the trial. Appellant had testified that he shot the victim while the victim was approaching him and uttering threats. Appellant testified that the victim reached for his pocket and that Appellant believed he was reaching for a gun or knife. Then he stated he grabbed his shotgun and fired once, and Demny (the victim) staggered and fell. The State introduced a statement Appellant gave the police on the morning after the shooting. This statement did not mention that Demny reached for his pocket, nor did it contain any claim of self-defense by Appellant. The record of the prosecutor's closing argument contains the following:

"[PROSECUTOR]: That statement speaks for itself. I ask you to take back every item of evidence back into the jury room with you, which you're entitled to do and I ask you to please read that statement in its entirety.

"Also obviously lacking in that statement is any claim whatsoever that the deceased was trying to kill him. Isn't that interesting? He didn't come up with any claim like that until after the State had presented its case and until well after he had gone down to Houston and hired him an attorney.

"[DEFENSE COUNSEL]: Your Honor, I object to Counsel attacking the defendant through his counsel. And, I request the Court to instruct the jury to disregard it.

"[THE COURT]: Denied, but sustain the objection."

■ An argument attacking defense counsel in an effort to inflame the minds of the jury to the accused's prejudice can not be condoned. *Lopez v. State*, 500 S.W.2d 844, 846 (Tex.Crim.App.1973). Furthermore, when such attacks on defense counsel strike at the core of a defendant's exculpatory story, the argument also violates the defendant's right to counsel under the Sixth Amendment to the United States Constitution. *United States v. McDonald*, 620 F.2d 559, 564 (5th Cir.1980).

The State argues that the prosecutor's statements were not an attack upon Appellant's counsel but, rather, were merely an attack upon the credibility of Appellant's claim at trial that Demny was trying to kill him. The State argues that the statement of the prosecutor was a reasonable deduction from the evidence and is, therefore, not improper. While the record certainly contained inconsistent statements by Appellant, there is nothing to indicate that he did not "come up with" his claim of self-defense until after he hired an attorney. Nor is there anything in the record from which it is reasonable to deduce that Appellant "came up with" the self-defense claim only after hiring an attorney.

We can find no permissible purpose for such arguments by the prosecutor in this case. More importantly, we can perceive only one message conveyed by the remark about hiring counsel, and that is that Appellant's counsel must have made up the defense. Such remarks penalize a defendant for exercising his right to counsel. *McDonald*, 620 F.2d at 564. Furthermore, such attacks on the integrity of defense counsel may be so manifestly improper that an instruction that the jury should disregard them may not be sufficient to cure the error. *See Lopez*, 500 S.W.2d at 846. In the present case, we need not decide the minimum remedy for such error because the trial court, though sustaining the objection, refused to grant any remedy at all. Appellant's thirtieth point of error is sustained.

By his point of error number twenty-five, Appellant complains that the trial court erred in instructing the jury as to the law of parole and good time credit as mandated by *TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4* (Vernon Supp.1987). We have previously addressed such contentions and found that the statute and instruction are not unconstitutional. *See Boudreaux v. State,* 723 S.W.2d 230 (Tex.App.—Beaumont 1986, no pet.). We continue to hold that both the statute and instruction are not unconstitutional. Furthermore, Appellant did not object to the submission of this instruction. Therefore, even if submission of the instruction was erroneous, Appellant's conviction cannot be reversed unless the record reveals that Appellant suffered egregious harm due to such error. *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985) (on rehearing).

After a thorough review of the entire record, we find nothing to indicate that the submission of the parole law instruction created such harm to Appellant that he was denied a fair and impartial trial. *See Almanza,* 686 S.W.2d at 171. Under the evidence presented, the jury was entitled to believe that Appellant fired one shot from a shotgun into the victim's chest at a distance of eight to ten feet. The jury was entitled to disbelieve Appellant's claim of self-defense. Neither attorney discussed parole law in their arguments or elsewhere. Under the record before us, we could not hold that Appellant was denied a fair and impartial punishment hearing. Therefore, Appellant's point of error number twenty-five is overruled.

We have carefully reviewed Appellant's remaining points of error and find them to be without merit, and they are hereby overruled.

The judgment of the trial court is reversed and the cause is remanded to the trial court.

Reversed and Remanded.

BURGESS, Justice, concurring.

I concur in the result with these additional comments. Under point of error number twenty-five, I would hold the parole law instruction unconstitutional. *See Boudreaux v. State,* 723 S.W.2d 230 (Tex.App.—Beaumont 1986, no pet.) (Burgess, J., dissenting). While I do not concede that an *Almanza* review is necessary, I concur with the holding that no egregious harm was shown.

BROOKSHIRE, Justice, dissenting.

With respect, this dissent is filed. The judgment of conviction is reversed, in the majority opinion, on two grounds. The first ground is that the trial court erred in overruling Appellant's challenge for cause against a venire person, Laurraine Geiver. Ms. Geiver did not serve on the jury, but the Appellant argues that the trial court's failure to excuse Geiver for cause required him to accept another juror who was unacceptable to him. The majority concedes and, indeed, recites that the Appellant did not communicate to the trial judge any reason for the challenge for cause against Geiver, based on statutory grounds, as set out in *TEX.CODE CRIM.PROC.ANN. Art. 35.16* (Vernon 1966 and Vernon Supp.1988).

A challenge for cause is a valid objection made to a particular venire person or juror showing some fact which renders him or her incapable or unfit to serve on that jury. *Article 35.16* sets out 11 grounds constituting unfitness to serve on the jury. None of those listed under *Art. 35.16(a)* are applicable here. The trial court was not properly advised about a challenge for cause under *Art. 35.16(c).*

In view of the state of the record, the majority also states that no error is preserved for appellate review, citing *Barney v. State,* 698 S.W.2d 114 (Tex.Crim.App. 1985). *See also Garcia v. State,* 626 S.W. 2d 46 (Tex.Crim.App.1981). The majority concedes this:

> "Thus, even in his brief, Appellant has failed to specifically point out what law Geiver was shown to be prejudiced against and upon which Appellant was entitled to rely. Therefore, he has not clearly identified the specific point of his complaint and thus does not comply with *TEX.R.APP.P. 74(d).*"

*See Barney v. State, supra,* at page 123. Nevertheless, the court proceeded to review this unpreserved point of error in the interest of justice, citing *Carter v. State,* 656 S.W.2d 468 (Tex.Crim.App.1983). *Carter, supra,* addresses the question of "fundamental error". Clearly, we do not have fundamental error here. *Barney, supra,* was a case in which the jury assessed death against the accused; again,—not our case here.

When fundamental error is not present, it would seem the better rule that an intermediate court not review matters which were not properly raised or preserved at trial and, additionally, were not properly briefed and brought before us. *Moreno v. State,* 114 Tex.Cr.R. 559, 26 S.W.2d 652 (1930). *See Wilson v. State,* 625 S.W.2d 331 (Tex.Crim.App.1981) (McCormick dissenting). The trial judge should be clearly and intelligently presented with the reason and basis for the challenge for cause so that he or she can intelligently rule upon the same. Moreover, defense counsel should be required, I submit, to point out *why* another juror, who the accused is required to take, is unacceptable. This reform in criminal procedure would enable the judge to correctly decide upon granting another strike. Admittedly, this concept may be a change or reform, but I think it will improve the quality of trials and diminish needless reversals. The concept will enable trial judges to rule in a more enlightened manner and probably avoid error. *See Wolfe v. State,* 147 Tex.Cr.R. 62, 178 S.W.2d 274 (1944).

The Court of Criminal Appeals now has rule-making power and can justly address this procedural anomaly.

Moreover, there is some basis in the record to indicate that venire person, Geiver, had the ability to at least consider probation in a proper case. Even though a prospective juror would have grave difficulty in considering probation in a murder case, that venire person would not be subject to challenge for cause if it was also elicited that that venire person could, in a proper case, consider probation. *Von Byrd*

*v. State,* 569 S.W.2d 883 (Tex.Crim.App. 1978).

It has been held that challenges for cause, not based on any ground mentioned in the relevant statutes and not pointed out and explained to the trial judge, *are addressed to the sound discretion of the trial judge. Moore v. State,* 542 S.W.2d 664 (Tex.Crim.App.1976).

Even where a venireman testifies several times that he simply could not give due consideration to the full range of punishment, which included probation, and although probation had no real meaning for him (as a possible penalty in a murder case), and that it would be a rare case where probation would be applicable; nevertheless, overruling a challenge for cause to such venire person was not an abuse of discretion of the trial judge. *Moore v. State, supra. See Barefoot v. State,* 596 S.W.2d 875 (Tex.Crim.App.1980).

The second ground for reversing the judgment is founded upon the trial court's alleged error, permitting the prosecutor to allegedly attack the Appellant by attacking his trial counsel during the closing argument at the guilt-innocence stage. The State had introduced a statement by the Appellant that was given by him to the law enforcement officers on the morning after the fatal shooting. This statement did not mention, or even allude, that Demny, the deceased victim, reached for his own pocket or reached for a weapon. Nor did the early statement contain any claim of self-defense by the Appellant.

However, the Appellant, much later, testified that he shot Demny while the victim was approaching and uttering threats. Further, the Appellant stated that the victim had reached for his pocket and that the Appellant believed Demny was reaching for a gun or a knife, neither of which was found at the scene.

I think that the prosecutor had a right to discuss the statement given by the Appellant the very morning after the shooting and the prosecutor had a right to ask the jury, under this record, to read the statement in its entirety. The statement, or a part thereof, was in evidence. Texas also

had a right to argue the *sequence of events as to when the Appellant first presented his alleged defense of self-defense.* In short, I think the prosecutor had a right to draw reasonable inferences and logical conclusions from the chronology of the statement, of the events at the trial, and the timing of the Appellant's claim of self-defense. The prosecutor *did not state that the self-defense issue was suggested or invented* by the defense counsel. As I read the argument, Texas was attempting to uphold the validity and credibility of the early statement made by the Appellant and to discredit the self-defense claim. Certainly Texas, through its prosecuting attorney, had a right to make this argument. *Alejandro v. State,* 493 S.W.2d 230 (Tex. Crim.App.1973).

Furthermore, the point of error wherein the Appellant alleges that the trial court erred in permitting the State to attack the Appellant through his counsel has not been prepared or briefed to comply with the rules of briefs of Appellants. *TEX.R.APP. P. 74.* No "authorities relied upon as may be requisite to maintain the point at issue" are cited, but more important is the fact that this phase of the prosecutor's argument clearly reflects that the *statement given by the Appellant was the matter being argued before the jury.* The State's attorney argued:

> "That statement speaks for itself. I ask you to take back every item of evidence back into the jury room with you, which you're entitled to do and *I ask you to please read that statement in its entirety.*
>
> *"Also obviously lacking in that statement is any claim whatsoever that the deceased was trying to kill him.* Isn't that interesting? ...." (Emphasis added)

Certainly, Texas, through its attorney, had a right to call to the attention of the jury the Appellant's statement, which was before it in evidence. The prosecutor had every right to do so and had a right to urge the jury to carefully read the Appellant's statement in its entirety after taking it to the jury deliberation room. The State's prosecutor also had a right to plead with the jury to consider *what was in the statement and what was left out of the statement.* Certainly, Texas had an undoubted right to ask the jury *to weigh the statement of the Appellant and also weigh the testimony given by the Appellant from the stand.* Obviously, this matter was a crucial point in the murder case. *Furthermore, there is no attack on Appellant's counsel. The attack, if there is any, is made upon the Appellant, himself.* There is no error shown by Appellant's point of error number 30 as briefed. There is no reversible error.

It is certainly not shown in the record how this argument made any contribution to the conviction or the punishment of the Appellant. *TEX.R.APP.P. 81(b)(2).* I would vote to affirm the judgment and sentence of the District Court.

The concurring opinion, I think, takes the position that the giving of the parole law instruction, by the trial judge, results in a reversal because the parole law instruction is unconstitutional to such an extent that an appellate court need not engage in a review as prescribed by *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.) (Opinion on rehearing) (Delivered Feb. 27, 1985). This, I submit, is a hazardous procedural concept filled with pitfalls and entrapments. The results would be that an accused would be under no obligation to object to the parole law instruction and, yet, on appeal, would obtain a virtual sua sponte reversal. Proper objections should be made at the trial court level for the simple reason that they give the trial judge a chance to delete the parole law instruction, corrections in the charge being the main function of objections to the court's charge. To hold otherwise, would tend to make the trial court proceeding one of "gamesmanship" rather than one of the orderly proceeding of a criminal prosecution. After all, the trial judges, before *Rose,* Appellant *v. State,* Appellee, No. 193–87 in the Court of Criminal Appeals (Opinion on Appellant's Petition for Discretionary Review) (delivered Nov. 12, 1987—as yet unpublished, pending on motion for rehearing), labored under a legislative mandate to give the parole law instruc-

tion as set out verbatim in the statute. Hence, an accused, knowing this and knowing the duty of the trial court to give the instruction, could simply remain silent, thereby obtaining a "built-in" reversal on appeal. This is an unsound, wasteful, archaic, antiquated system of appeals.

The efficacy of objections to the parole law instruction is demonstrated by such cases as *Henry v. State,* 732 S.W.2d 443 (Tex.App.—Beaumont 1987, no pet.). I have good reason to believe that many trial judges will remove the instruction when objected to.